CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
9/28/2023
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| **GARNETT H.**[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )  Civil Action No. 6:22-CV-00039 |
| | ) |
| **COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

### MEMORANDUM OPINION

Garnett H. ("Garnett") filed this action challenging the final decision of the Commissioner of Social Security finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1381f. Garnett alleges that the Administrative Law Judge ("ALJ") erred by failing to properly consider one of the medical opinions in the record and by failing to discuss his stage III chronic kidney disease. I conclude that substantial evidence supports the Commissioner's decision. Accordingly, I **GRANT** the Commissioner's Motion for Summary Judgment (Dkt. 17) and **DENY** Garnett's Motion for Summary Judgment (Dkt. 14).

### STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Garnett is not disabled under the Act.[2] Mastro v. Apfel, 270

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

1

F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." Biestek, 139 S. Ct. 1148. The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Garnett filed for DIB and SSI in September 2019, claiming that his disability began on September 30, 2019.[3] The state agency denied Garnett's claims at the initial and reconsideration

---

than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] Garnett provided this amended onset date at the July 1, 2021, hearing. Dkt. 15 at 1. Garnett's last date insured was December 31, 2019; thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive disability insurance benefits. R. 13; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

levels of administrative review. R. 80–172. ALJ Nicholas R. Foster held a hearing on July 1, 2021, to consider Garnett's claims for DIB and SSI, which included testimony from vocational expert Robert Jackson. R. 35–51. Garnett was represented by counsel at the hearing. On September 9, 2021, the ALJ entered his decision considering Garnett's claims under the familiar five-step process[4] and denying his claim for benefits. R. 12–29.

ALJ Foster found that Garnett suffered from the severe impairments of aortic regurgitation, aortic resection, kidney disease, anxiety, and substance use disorder. R. 15. The ALJ found that these impairments significantly limit Garnett's ability to perform basic work activities. Id. ALJ Foster determined that Garnett's severe impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 16–17.

ALJ Foster concluded that Garnett retained the RFC to perform light work, except that Garnett cannot climb ladders, ropes, or scaffolds, but he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can have no exposure to temperature extremes, vibration, or hazards. R. 17–26.

The ALJ determined that Garnett was unable to perform any past relevant work. R. 27. The ALJ also determined that Garnett could perform other work that exists in the national

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

economy such as cleaner and marker. R. 27–28. Thus, the ALJ concluded that Garnett was not disabled. R. 28. Garnett appealed that the Appeals Council denied his request for review on May 17, 2022. R. 1.

## ANALYSIS

I.     **Medical History Overview**

   a.  Physical Health Treatment

In December 2015, Garnett had surgery to address issues with his aortic valve. R. 19. Since that time, medical records show that he has had moderate cardiac health issues. In September 2019, an echocardiogram showed moderate to severe aortic regurgitation, however Garnett was characterized as asymptomatic. R. 201. A November 2019 examination showed a heart murmur, but Garnett had a regular heart rate and rhythm with normal heart sounds and no rub or gallops. R. 761. In June 2020, a cardiac examination showed no abnormal heart sounds or murmurs and his carotid arteries showed normal pulses. R. 963. A December 2020 echocardiogram showed evidence of improvement, and the provider estimated Garnett's aortic regurgitation as mild to moderate in range. R. 1354. Imaging in January 2021 showed no significant changes, R. 1490, and a June 2021 examination showed a heart murmur but regular rate and rhythm with physiologic heart sounds and no gallops. R. 1589.

The medical records show that Garnett was diagnosed with stage III chronic kidney disease on February 1, 2019. R. 378. A November 2019 examination noted that Garnett was "doing well at this time" with respect to the kidney disease. R. 762.

   b.  Mental Health Treatment

Garnett has complained of cognitive problems, including memory problems, poor sustained focus of attention, easy distractibility, and chronic difficulty initiating and persisting at

work tasks. R. 20–22. However, the medical records indicate that he was regularly cooperative, with goal-directed thought processes and intact associations, with no evidence of hallucinations, delusions, obsessions, or suicidal or homicidal ideation. R. 20–21. In November 2019, Garnett appeared anxious and answered questions slowly, but he showed adequate judgment and insights. R. 942. He attended the interview without evidence of impairment in his attention span and concentration. Id. In January and February 2020, Garnett said that he had been spending time with family and friends, but that he was having difficulty managing stress. R. 904–928. An April 2020 examination showed that Garnett had an irritable mood, a constricted affect, and poor judgment and insight. R. 894. In May 2020, Garnett reported that his anxiety symptoms were under control with medication. R. 1297. A September 2020 examination described Garnett as calm, cooperative, and fully oriented, with logical and goal directed thought processes, while also noting that he displayed an anxious mood. R. 1250. In December 2020, Garnett reported increased anxiety and regular panic attacks, but denied suicidal and homicidal ideation and hallucinations. R. 1337. His provider adjusted his medications at this consultation. R. 1338.

    c. Medical Opinions

On October 2, 2019, Joseph Childers Conley, Ph.D., performed a neurocognitive evaluation and concluded that Garnett's neurocognitive deficits rendered him incapable of sustaining any type of employment. R. 754. Dr. Conley found that Garnett exhibited bradyphrenia and bradykinesia, and that he was overtly inattentive, and that Garnett's neuropsychological testing showed impaired attention, visual memory and mental tracking, inhibitory dysfunction, inactive retrieval of verbal memory traces from long term storage, and slowness to adapt to novel stimuli. R. 753–54. Dr. Conley stated that Garnett was alert, oriented, and applied himself "as best he could" on all tasks. R. 752–53. Garnett showed normal mental

status on testing, unimpaired practical judgment, average intellect, and normal verbal memory. R. 753. The ALJ did not find Dr. Conley's opinion persuasive. R. 23. The ALJ reasoned that while Garnett's slowed mental and physical responses, inattentiveness, and some neurological test results supported Dr. Conley's conclusion, Garnett's alert and oriented status, as well as test results showing unimpaired practical judgment, verbal memory, and mental flexibility contradict the determination. R. 23–24.

State agency consultant Joseph Duckwall, M.D., determined that Garnett could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. Id. Dr. Duckwall stated that Garnett needed to avoid concentrated exposure to extreme cold, vibration, and hazards. R. 24–25. The ALJ found this opinion persuasive. R. 25. The ALJ reasoned that Garnett's aortic regurgitation, aortic dissection, and kidney disease support Dr. Duckwall's conclusions and a restriction to light exertion. Id. State agency consultant Bert Spetzler, M.D., affirmed on reconsideration Dr. Duckwall's physical residual functional capacity determination. R. 26.

State agency consultant Howard S. Leizer, Ph.D., determined that the claimant had moderate difficulties in understanding, remembering, or applying information, mild difficulties in interacting with others, moderate difficulties in concentrating, persisting, and maintaining page, and moderate difficulties in adapting or managing himself. R. 92–94. Dr. Leizer found that Garnett could perform simple, one to three step tasks consistently and maintain concentration for one-to-two-hour intervals. Id. The ALJ found this opinion partially persuasive. The ALJ reasoned that Garnett's neuropsychological testing results, substance abuse and anxiety

treatment, and mental status examinations support a restriction limiting him to understanding, remembering, and carrying out simple instructions. R. 24.

State agency consultant Stephen B. Saxby, Ph.D., concluded that Garnett has moderate difficulties in understanding, remembering, or applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing himself. R. 25. Dr. Saxby found that Garnett could perform simple, one to three step tasks consistently and maintain concentration for one-to-two-hour intervals. Id. The ALJ found this opinion mostly persuasive. Id. The ALJ reasoned that Garnett's substance abuse treatment, mental status examinations, and neuropsychological testing support a restriction limiting Garnett to understanding, remembering, and carrying out simple instructions and making simple work-related decisions, with a moderate limitation in interacting with others. Id. The ALJ explained that a more restrictive mental residual functional capacity was not warranted because Garnett's mental status examinations "were mostly unremarkable." R. 25–26.

## II.     Mental Impairments and Substantial Evidence

Garnett argues that the ALJ's determination of Garnett's mental RFC is not supported by substantial evidence. Specifically, Garnett argues that the ALJ erred by finding that Garnett had only a moderate limitation in concentration, persistence, and pace. Pl.'s Br. at 4.

Garnett asserts that the ALJ should have accorded greater weight to Dr. Conley's conclusions. He argues that the results of neurocognitive tests are incompatible with a finding of only a moderate limitation in concentration, persistence, and pace. Id. at 5. Garnett claims that the ALJ's reasoning is "self-contradictory" because he found Drs. Saxby and Leizer's opinions mostly and partially persuasive, respectively, and they both relied on the results of neuropsychological testing conducted by Dr. Conley to reach their conclusions. Id. at 5–6.

Garnett argues that if the ALJ found these test results persuasive in supporting Drs. Saxby and Leizer's opinions, then they must support Dr. Conley's opinion as well. Id. at 6.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe, 826 F.3d at 189 (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In Shinaberry v. Saul, the Fourth Circuit clarifies that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). However, Mascio does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Id. In contrast, Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine

8

tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). Shinaberry further confirms that Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, but instead underscores the ALJ's duty to adequately review the evidence and explain the decision. See also Monroe, 826 F.3d 176 (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record).

Here, Garnett's argument fails because the ALJ explained his reasoning for discounting Dr. Conley's opinion. The neuropsychological test results, which showed inattentiveness, restlessness, and slow response time, also showed adequate "mental status, unimpaired practical judgment, average intellect, normal verbal memory, abstract concept formation[,] and mental flexibility." R. 23–24. The ALJ explained that Dr. Conley's opinion was not consistent with those test results. Id. at 24. Further, the ALJ found that Dr. Conley had "opined on an issue [] reserved to the Commissioner," and thus had "not provide[d] articulation about the evidence that is inherently valuable or persuasive to the issue of whether the claimant is disabled." Id. The ALJ sufficiently explained that the mixed test results, and Dr. Conley's opinion on an issue reserved for the Commissioner, provided reason for the ALJ to discount Dr. Conley's opinion. I find that the ALJ's assessment of Garnett's impairments was sufficient under SSR 96-8P.

### III. Physical Impairments and Substantial Evidence

Garnett next asserts that the ALJ committed error in formulating Garnett's physical RFC by failing to consider or discuss his stage III chronic kidney disease. Pl.'s Br. at 9–10. The ALJ is required to develop an adequate RFC that accounts for the work activities the claimant can perform given the physical or mental impartments affecting his ability to work. Importantly, the

ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8P, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d 632, 636 (4th Cir. 2015) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D. W. Va. Apr. 29, 2015).

Here, the ALJ's discussion of Garnett's kidney disease was sufficient. The ALJ recognized that Garnett "receives medical treatment for kidney disease, indicating that his body retains fluid, and his urine output is slow." R. 18. The ALJ repeatedly referenced Garnett's occasional lower extremity edema. R. 18, 19. In explaining his decision to limit Garnett to light work, the ALJ stated that Garnett had been "doing well with regard to his kidney impairment." R. 22. Garnett disputes the accuracy of this conclusion, however it originated in a treatment

10

record on which the ALJ partially based his determination. R. 762. Further, the ALJ does not have to address every piece of inconsistent evidence, Smith v. Colvin, No. 1:12cv1247, 2015 WL 3505201, at *7 (M.D.N.C. June 3, 2015); see also Brittani v. Sullivan, 956 F.2d 1162 (4th Cir. 1992); rather, the ALJ must author an opinion which shows how the evidence of record supports the decision made.

Attacking whether substantial evidence exists requires more than simply identifying medical records or statements that are inconsistent with the ALJ's findings. A claimant must show that the ALJ used an improper legal standard, did not consider a relevant portion of the record, did not satisfy the duty of explanation, or the overwhelming weight of inconsistent evidence overcomes the very low substantial evidence standard. The Fourth Circuit has been clear that an ALJ's findings "as to any fact, if supported by substantial evidence, shall be conclusive." Hart v. Colvin, No. 5:169cv32, 2016 WL 8943299, at *3 (N.D.W. Va. Sept. 14, 2016) (quoting Walls v. Barnhart, 296 F. 3d 287, 290 (4th Cir. 2002)). Here, Garnett has done no more than question the ALJ's conclusion.

Contrary to Garnett's contentions, the ALJ provided a detailed summary of Garnett's physical impairments, medical records, testimony, and opinion evidence. The ALJ was required to create a narrative discussion that builds "an accurate and logical bridge from the evidence to his conclusion," which the ALJ did in his discussion of the medical and non-medical evidence, Garnett's alleged symptoms, and the medical opinions of record. This narrative discussion allows this court to see how the evidence in the record—both medical and non-medical—supports the RFC determination. Because I was not "left to guess" at how the ALJ reached his RFC determination, I find that the ALJ's conclusion is supported by substantial evidence. Mascio, 780 F.3d at 637.

## CONCLUSION

For the reasons stated above, I **GRANT** summary judgment to the defendant, **DENY** Garnett's motion for summary judgment, and **DISMISS** this case from the Court's docket.

Entered:  September 28, 2023

*Robert S. Ballou*

Robert S. Ballou
United States District Judge